---

ROSLYN, The (COBANKS v.). See Case No. 12,068.

---

## Case No. 12,069.

### Ex parte ROSS.

[2 Bond, 252.] [1]

District Court, S. D. Ohio. April Term, 1869.

EXTRADITION—WARRANT FOR ARREST—COPIES OF ORIGINAL PAPERS.

1. Under the treaty between the United States and Great Britain, of August 9, 1842 [8 Stat. 572], and the legislation of congress for carrying into effect its stipulations, no authority is required from the executive department of the United States to enable a judge, magistrate, or commissioner to issue a warrant for the arrest of an alleged fugitive from justice.

[Cited in Re Thomas, Case No. 13,887.]

2. Upon the hearing of a case arising under said extradition treaty, not only copies of depositions, but also copies of warrants and other papers, certified under the hand of the person issuing the same, and attested upon the oath of the party producing them, to be true copies of the originals, are admissible as evidence of the criminality of the person apprehended.

3. The act of June 22, 1860 [12 Stat. 84], which enacts as a mode of proof of the authenticity of such papers the certificate of the minister or consular officer of the United States in the foreign country, does not repeal or alter the act of congress of August 12, 1848 [9 Stat.

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

302]. It merely provides another mode of authenticating the papers additional to the one provided by that act.

At law.

King, Thompson & Avery, for British government.

Thomas Powell and George F. Hoeffer, for defendant.

LEAVITT, District Judge. This is an application, in behalf of the government of Great Britain, for the extradition of Patrick Ross as a fugitive from justice, charged with murder committed by him in Ireland. The complaint or information was made in this country on the oath of Edward Mortimer Archibald, as the British consul for the port of New York, November 17, 1864, before a commissioner of the United States, duly authorized to act in such cases. The complaint sets forth that upon the information and belief of the affiant, the said Ross, on April 26, 1862, at Melkagh, in the county of Longford, Ireland, feloniously murdered one Mary Corrigan; and that he was, at the date of the complaint, in the state of Ohio. The consul prays that a warrant may issue, by the district judge of the United States for the Southern district of Ohio, for the apprehension of Ross, to the end that the charge may be investigated, and that upon sufficient evidence of his guilt the proper certificate may be issued to the secretary of state of the United States, to authorize a warrant by him for the surrender of said Ross to the proper authorities of Great Britain, for trial within the jurisdiction in which the alleged crime was committed.

In pursuance of the prayer of said complaint, on the 2d of March last, I issued a warrant for the apprehension of Ross, which has been returned served, and he has been brought before me in custody, and has had the assistance of counsel in the hearing, so far as it has already progressed. Upon the hearing, sundry documents, papers, and oral testimony were offered by the counsel representing the British government, tending to prove the guilt of Ross, as alleged against him in the complaint and information of the consul. To these, exceptions were taken by counsel, as not being in pursuance of the treaty of extradition between the government of the United States and that of Great Britain, and the legislation of congress for executing the provisions of said treaty. I shall notice briefly such of these exceptions as are deemed material, and state the conclusions at which I have arrived.

It is objected, in the first place, that, as a district judge of the United States, I had not jurisdiction to issue the warrant requiring the alleged fugitive to be brought before me, and that such warrant can issue only after the action of our government, through the secretary of state, authorizing the judge to act, and cause the accused to be brought before him. This being a question involving

the authority of the judge in this case first requires consideration. If the warrant has been improvidently and illegally issued, the accused party is entitled to be released from custody. But I am wholly unable to perceive that the view urged is sustained by the construction of the treaty or the acts of congress. By the tenth article of the treaty between our government and that of Great Britain, ratified by the United States on August 9, 1842, it is stipulated that persons charged with "murder, or piracy, or arson, or robbery, or forgery, etc., committed within the jurisdiction of either government, who shall seek an asylum, or be found within the territories of the other, shall, upon the proper requisition, be delivered up to justice, upon such evidence of criminality" as, according to the laws of the place where the fugitive shall be found, shall justify his commitment for trial, if the crime or offense had been there committed; and judges or magistrates of either government are authorized, "upon complaint made under oath, to issue a warrant for the apprehension of the fugitive, or person so charged, to the end that the evidence of criminality may be heard and considered;" and if such evidence be deemed sufficient to sustain the charge, it is made the duty "of the examining judge or magistrate to certify the same to the proper executive authority, that a warrant may issue for the surrender of such fugitive."

The first legislation of the congress of the United States for carrying into effect the treaty stipulations between the two governments is the act of August 12, 1848. The first section of this act recites many of the stipulations contained in the treaty of 1842, which has been referred to. It authorizes, among other provisions, "any of the justices of the supreme court, or judges of the several district courts of the United States, and the judges of the several state courts, and the commissioners authorized so to do by any of the courts of the United States," upon complaint made, under oath or affirmation, charging any person found within the limits of any state or territory with any of the crimes enumerated in the treaty, "to issue a warrant for the apprehension of the person charged, that he may be brought before such judge or commissioner for the hearing and investigating the charge of crime against him; and if on such hearing the evidence is deemed sufficient, the judge or commissioner is to certify to the secretary of state his finding, with a copy of the evidence. And the secretary of state thereupon, on the requisition of the foreign government, issues his warrant for the surrender of the fugitive." Such, in substance, are the provisions of the treaty, and the first section of the act of 1848, as applicable to the point under consideration. After a careful investigation of the case, I can perceive no ground for the conclusion that there must be authority from the executive department of our government, to enable

the judge, magistrate, or commissioner to issue a warrant for the arrest of the alleged fugitive. Neither the treaty nor the statute contains such a requisition. On the contrary, the power is plainly conferred, and it is made the express duty of the judge, or other officer, on a complaint made on oath, as required by the treaty and the statute, to issue a warrant, and cause the alleged fugitive to be brought before them.

The British statute of the 6 & 7 Vict., of August 22, 1843, to carry into effect the treaty of 1842, in relation to the surrender of fugitives, in the matter under consideration, is essentially different from the act of congress of 1848. The British statute empowers a magistrate to issue a warrant for the arrest of the alleged fugitive for a crime committed within the jurisdiction of the United States, upon a warrant issued by the proper executive officer of the British government. It is only upon such preliminary authority that the magistrate can issue the warrant, and cause the supposed fugitive to be brought before him for inquiry into the truth of the charge. But our statute, for obvious reasons, contains no such provision. It does not require our secretary of state to authorize the judge, or other proper officer, to issue a preliminary warrant, but does require that after the judge or other officer has certified the case to the secretary of state, with his conclusion that the criminality of the fugitive is proved, that the secretary shall issue his requisition or warrant, upon the demand of the British government, for the extradition of the criminal. Now it needs no argument to prove that the judges or officers of the United States government, authorized to act in these cases, must be governed by the legislation of this country, and not by that of Great Britain. Each government, in the execution of the treaty, had an undoubted right to adopt such a course of legislation, not in conflict with the treaty stipulations, as it might deem most expedient. I have no doubt, therefore, of my authority to issue the warrant in this case, and to inquire into the facts connected with the charge of crime against the alleged fugitive. And the exception on the ground of want of jurisdiction is therefore overruled.

It is also a ground of exception to an order certifying to the secretary of state of the United States, the conclusion of the judge in regard to the criminality of the alleged fugitive Ross, that the papers and documents, and oral evidence adduced, are not in conformity with the requirements of the acts of congress, and can not, therefore, be received as a legal basis of action by the judge. The written papers and documents are voluminous. I may remark, however, that they seem to have been carefully prepared, and are characterized by unusual fullness and precision. They were evidently got up with an intelligent reference to the treaty between the United States and Great Britain, and the legislation of the two countries, on the subject of the extradi-

tion of criminals. From these it appears, in substance, that on April 30, 1862, certain complaints, informations, and inquisitions were taken before one O'Donnell, a magistrate of the county of Longford, in Ireland, tending to prove that one Patrick Ross, of Melkagh, in said county, on the 20th of April, in said year, inflicted a wound on the person of one Mary Corrigan, which caused her death on the 29th of that month. The affidavit of said Mary Corrigan, taken shortly after the occurrence of the shooting, setting forth the fact, and showing a deliberate and unprovoked attack upon her by Ross, in the manner stated, is among these proofs. In addition to this, shortly before her death and in its near prospect, she made a dying declaration, deliberately repeating the facts, as set forth in her previous affidavit, in relation to the shooting by Ross. It also appears that on the 30th of April, the day after the death of Mary Corrigan, a coroner's inquest upon her body was duly held, in which the jurors found, under oath, that she came to her death "by a gunshot wound inflicted on her right side, by Patrick Ross, of Melkagh," and they find him guilty of the murder of said Mary Corrigan. There was also a certified post-mortem examination, showing the nature of the wound inflicted, and that it caused the death of said Mary Corrigan. It is also in evidence that immediately after the alleged murder, Ross left the vicinity of the murder, and was not apprehended to answer to the crime. He came to this country, and an attempt was made to arrest him in Cincinnati in 1864, but he then escaped the vigilance of the officers having the warrant. He was arrested in February last, at Cincinnati, by a police officer of the city, and subsequently brought before me in virtue of a warrant as already stated.

These are, perhaps, all the facts in relation to the commission of the alleged crime which it is necessary to notice. The written evidence offered to prove the facts is objected to as inadmissible. The complaints, informations, and inquisitions were taken before O'Donnell, proved to have been, at the date of the proceedings, an acting magistrate of the county of Longford. He has died since that time, and the proceedings had before him are authenticated, first, by the official certificates of Thomas O. Plunkett, dated the 14th of March last, setting forth, to each paper, that they are true copies from the crown office of said Longford county; and, second, by the oral testimony taken before me, from the witnesses Rooney and Draine, who swear that they carefully and accurately compared the originals of said papers and documents with the copies now offered in evidence, and that these are true copies. These witnesses swear that they have been for years employed in the constabulary force of the county of Longford. They prove that O'Donnell was an acting magistrate in said county, in 1862 and 1863; that the said several papers were on file or on record in the proper clerk's office of the crown; that Plunkett was, at the date of his several certificates, and for years before, an acting magistrate in said county; that they saw him sign the several certificates authenticating the copies of the papers and documents aforesaid; and that by virtue of the same, he issued a warrant, as magistrate, in March last, for the arrest of said Ross, which was delivered to said Rooney and Draine, and which they produce as an exhibit. There is, in addition to this, evidence of the official character of the magistrate Plunkett, other proof equally credible and legitimate. But as the oral testimony of Rooney and Draine complies literally with the requirement of the act of congress, it is wholly unnecessary to refer to other proofs.

The admissibility of this evidence under the act of congress of August 12, 1848, in these cases, must depend upon the terms of the act. By the second section of the act it is declared, "That in every case of complaint as aforesaid, and of a hearing upon the return of the warrant of arrest, copies of the depositions upon which an original warrant in any such foreign country may have been granted, certified under the hand of the person or persons issuing the same, and attested upon the oath of the party producing them to be true copies of the original deposition, may be received in evidence of the criminality of the person so apprehended." No language could be plainer or more explicit than that used in this section. It makes copies of the depositions evidence, certified under the hand of the person issuing the same, and attested upon the oath of the party producing them to be true copies of the original. Congress had the undoubted power to declare that copies of the original papers, thus authenticated, should be received in evidence on the hearing of any case arising under the extradition treaty. The act of 1848 has so provided, and the evidence offered is clearly within its requirements. And I can not see that this provision is in any way affected by the amendatory act of June 22, 1860. It does not repeal the act of 1848 in any of its requirements, but, on the contrary, refers to that act as in full force. It is amendatory of the first act, enlarging its operation in some particulars. The act of 1848 refers only to and includes copies of depositions, whereas the act of 1860 includes also copies of depositions, warrants, and other papers, thus making copies of papers receivable in evidence that by a rigid construction might not be admitted under the act of 1848. These additional papers, properly and legally authenticated, and entitled to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, are made evidence under the act of 1860. That the papers offered in this case, authenticated as they are, would be received and accredited by the magistrates and courts in Great Britain, is too clear for controversy. The act of 1860 also enlarges the provisions of

the act of 1848, by exacting, as a mode of proof of the authenticity of the papers, the certificate of the minister, or consular officer of the United States in the foreign country, that they are verified as required by this act. But this does not repeal or alter the act of 1848, authorizing the admission of papers, "certified under the hand of the person or persons issuing such warrant, and attested by the oath of the party producing them, that they are true copies." It merely provides another mode of authenticating the papers, additional to that provided by the act of 1848.

And it is worthy of notice on this point, as showing the intention of the governments of Great Britain and the United States as to the character of the evidence to be received in the hearing of these extradition cases, that' the second section of the act of parliament of August 22, 1843, passed the next year after the ratification of the treaty between the two governments, is identical with some provisions of the second section of the act of congress of 1848, enacted five years after the passage of the British statute. The latter statute provides, in express words, "that copies of the depositions upon which the original warrant was granted, certified under the hand of the person or persons issuing such warrant, and attested upon the oath of the party producing them to be true copies of the original depositions, may be received in ·evidence of the criminality of the person so apprehended." From this, it is a fair inference that congress had the British statute before them in framing and passing the act of 1848, and intended a perfect reciprocity be-•tween that and the British statute, as to the mode of proof. Nor can it be doubted that both governments are mutually bound to recognize the obligations of the laws of the other, in cases of applications for the rendition of fugitives; and the judges or magistrates of each must admit evidence authenticated as required by the statute of the country, in behalf of which the rendition is sought.

There are other points of exception to these proceedings, exceedingly technical in their character, to which I have not thought it necessary to advert. The only questions needing consideration are those relating to the jurisdiction of the judge and the admissibility of the evidence offered. These being disposed of, I shall not expand this opinion by other and unimportant considerations.

It may be well, perhaps, to remind the counsel for the accused that the action of the court in the present proceeding is not conclusive upon him. If it shall be held to be necessary to remit him to his native country, to answer to the criminal charge against him, he will there have a full opportunity of defense before a jury, and will only be found guilty upon clear and legal proof.

It is understood that counsel for the accused desire, upon the overruling of the exceptions urged, to introduce evidence in his defense, negativing the charge of criminality against him. The opportunity to do so will, of course, be freely granted.

The prisoner cut his throat and died, pending a further hearing of the case.